WINSTON KU,
        Plaintiff,

-vs-

Case No. A-09-CA-758-SS

AUSTIN CONVENTION CONDOMINIUM ASSOCIATION, INC.; AUSTIN CONVENTION ENTERPRISES, INC; HILTON HOTEL CORPORATION; THE 5 FIFTY FIVE CONDOMINIUM ASSOCIATION; and GERARD SCHNEYER,
        Defendant.

## ORDER

BE IT REMEMBERED on the 14th day of April, 2010, the Court called the above-styled cause for a hearing on all pending matters and the Defendants appeared through counsel and the Plaintiff appeared pro se. The Court has reviewed the parties' arguments at the hearing and the file in the above-styled cause, specifically Defendant Austin Convention Condominium Association ("ACCA")'s Motion to Compel Arbitration [#122], Plaintiff Winston Ku ("Ku")'s Response [#124], ACCA's Reply [#139], Ku's Supplement to Response [#144], ACCA's Supplement [#143], and Ku's Second Amended Complaint [#136]. Having reviewed the above documents, the parties' arguments, the case file as a whole, and the applicable law, the Court enters the following opinion and orders.

## Background

The Neches Hotel Condominiums is a mixed use project with three separate parts: the Hotel Unit (which has the Hilton Hotel), the Residential Unit–also known as "The 555" (which has the residential condominium units), and the Retail Unit (which has retail space). Ku purchased three condominiums in The 555. Two of Ku's condos were located under the Hilton's banquet kitchen room. Ku complains there are "repetitive leak and noise nuisances" in the two units, which have led to severe water damage and unreasonable noise disturbances "24/7." 2nd Am. Compl. at ¶ 121. Ku claims various design and construction defects caused or contributed to the problem.

Ku, proceeding pro se, now brings numerous state-law claims against the ACCA, the master association[1] set up to manage the Neches Hotel Condominiums; Austin Convention Enterprises ("ACE"), which owns the Hotel Unit within Neches Hotel Condominiums; Hilton Hotel Corporation ("Hilton"), which manages and maintains the Hotel Unit pursuant to an agreement with ACE; the Five Fifty Five Condominium Association ("555 COA"), the homeowners' association that manages The 555; and Gerard Schneyer, an individual resident of The 555 and a past board member of 555 COA. *Id.* at ¶¶ 2-6.

Ku asserts 13 causes of action: (1) breach of implied service contract by ACCA and 555 COA; (2) breach of fiduciary duties by ACCA and 555 COA; (3) deceptive trade practices under the DTPA by ACCA and 555 COA; (3) conspiracy by ACCA, ACE, and 555 COA; (4) negligence by ACCA, ACE, Hilton, and 555 COA; (5) negligence *per se* by ACCA, ACE, Hilton, and 555 COA; (6) private nuisance by ACCA, ACE, Hilton, and 555 COA; (7) public nuisance by ACCA, ACE,

---

[1] The members of this association are the 555 COA, ACE, and the owner of the Retail Unit. Ku is undisputedly *not* a member of ACCA. Def. Mot. [#122] at 2.

Hilton, and 555 COA; (8) reverse condemnation by ACE; (9) misrepresentation by 555 COA; (10) defamation–libel by 555 COA and Schneyer; (11) invasion of privacy by 555 COA and Schneyer; (12) negligent infliction of emotional distress by all Defendants; and (13) intentional infliction of emotional distress by ACE, Hilton, and 555 COA. He seeks damages and a permanent injunction enjoining Defendants from causing further leak and noise nuisance. Am. Compl. at ¶¶ 187-89.

Defendants ACE, Hilton, and ACCA, in turn, filed Third Party Complaints against the various contractors, subcontractors, and other entities who worked on Ku's condominiums, namely: Landmark;[2] FaulknerUSA;[3] Neches;[4] Baker Concrete Construction, Inc.; Dynamic Systems, Inc.; Ellerbe Becket Inc.; Levien-Rich Associates; All Star;[5] and S.T.G. Design, Inc. *See, e.g.* ACCA's Third Party Compl. [#34] at ¶¶ 3-22.

As if this were not sufficiently complicated, NHC and The 555 each has its own owners association and condominium declaration. The "Master Declaration" governs the NHC, the "master condominium regime"; whereas the "555 Declaration" governs the residential units in The 555. *See* Pl. Resp. [#124] at ¶¶ 1-2. However, the 555 Declaration includes a provision by which "[e]ach owner and any occupant of any [residential unit] automatically shall be deemed to have agreed to comply strictly with the provisions of the Master Declaration." Def. Supp. [#143] Ex. A § 3.3. Ku

---

[2]This designation includes Landmark Organization, L.P., Landmark Constructors, and Landmark Organization, Inc.

[3] This designation includes FaulknerUSA, L.P., FaulknerUSA GP, Inc., and FaulknerUSA Acquisitions, L.L.C.

[4] This designation includes H.L. Hotels, L.P., Hotel Corporation of America, and Neches Street Partners, L.P..

[5] This designation includes All Star Specialty Construction, Journeyman Construction, L.P. and Journeyman Company, Inc.

recognizes he is a party to the 555 Declaration by virtue of his ownership of condominiums in The 555. *See id.* at 7.

The ACCA filed a motion to compel arbitration based on an arbitration clause in the Master Declaration. Initially ACCA sought to assert Ku was a party to the agreement for purposes of arbitration, because it argued Ku's suit was effectively under the terms of the Master Declaration. However, ACCA simultaneously disputed whether Ku was a party to the Declaration for purposes of any obligations ACCA might owe to him. *See* Mot. Compel at ¶ 3. After Ku submitted his Second Amended Complaint in which he disclaimed any reliance on the Master Declaration, ACCA altered its argument, essentially arguing Ku's ownership of the condominiums caused him to agree to be bound by the Master Declaration through the incorporation clause, §3.3, of the 555 Declaration. *See* Def. Supp. [#143] at 1-2.

## Analysis

### I.     Federal Arbitration Act

The starting point of the Court's analysis is the Federal Arbitration Act ("FAA")9 U.S.C. §§ 1-16. The FAA applies to an action as long as the contract containing the arbitration agreement "evidenc[es] a transaction involving commerce" among the several states. *See* 9 U.S.C. §§ 1-2; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). Neither party disputes the Master Declaration evidences transactions involving commerce between the states and thereby falling within the purview of the FAA.

The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). Thus, the FAA provides that binding arbitration

agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. But, the FAA's purpose is not to provide special status for such agreements; rather, it makes "arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp.*, 388 U.S. at 404 n. 12.

The Fifth Circuit employs a two-step analysis to determine whether a party may be compelled to arbitrate. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citations omitted). First, a court must ask if the parties agreed to arbitrate the dispute. *Id.* This first step of the analysis itself contains two questions: (1) whether there is a valid agreement to arbitrate, and (2) whether the dispute is within the scope of the agreement. *Id.*; *Will-Drill Resources, Inc. v. Samson Resources*, 352 F.3d 211, 214 (5th Cir. 2003).

If the parties did agree to arbitrate the dispute, the court must then ask if "any federal statute or policy renders the claims nonarbitrable." *Id.* In other words, "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). The burden lies with the party attempting to avoid arbitration "to show that Congress intended to preclude a waiver of a judicial forum" for the party's claims. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

### A. Agreement to Arbitrate

#### 1. Is There a Valid Agreement to Arbitrate?

ACCA is the master association with responsibilities for certain parts of the Neches Hotel Condominiums, where Ku's condos are located. ACCA was created by and is governed by the terms of the "Master Declaration." *See* ACCA's Mot. Compel at Ex. A. The Master Declaration contains

an arbitration clause, which ACCA claims is binding on Ku for two reasons (1) because he is effectively suing ACCA under the terms of the Master Declaration, and (2) because his is bound by the 555 Declaration which incorporates the Master Declaration.

There are some problems with the first of these theories. First, Ku himself is not a member of ACCA. ACCA's members are: (1) 555 COA (of which Ku *is* a member by virtue of ownership of his condos and thus his agreement under the 555 Declaration)[6], (2) ACE, and (3) the Neches Street Partners, which own the Retail Unit. Second, Ku vehemently denies any reliance on the Master Declaration, or indeed any agreement with ACCA whatsoever.[7] Rather, he asserts in his Second Amended Complaint his only claim is an implied-in-fact contract between himself and ACCA due to the fact that some of the monthly dues he paid to 555 COA ended up in the budget of ACCA. . Further, Ku alleges other of his claims arise from the Texas Uniform Condominium Act (TUCA) and ACCA's Articles of Incorporation, and not from the Master Declaration.

Ku does not, however, respond to ACCA's second theory. This theory, and the text of the 555 Declaration on which it relies, was only provided to the Court after the conclusion of the hearing, on April 28, 2010. *See* Def. Supp. [#143]. Ku provided his own supplement one day later,

---

[6] The 555 Declaration provides "Each Owner shall automatically be a member of the Association." Def. Supp. Ex. A at § 4.2.

[7] Indeed, if vehemence was sufficient, Ku would certainly have won this point. He variously claims he "was NOT and has NEVER claimed to be a 'party' to the Master Declaration or any contract or agreement with ACCA," Pl.'s Resp. at ¶ 8; "Plaintiff has not claimed and does NOT claim to be a "*party*" to the NHC Master Declaration, which, in any case, is NOT a contractual agreement between Plaintiff and ACCA," 2nd Amend. Compl. at ¶ 123 (emphasis in original); and "[e]ven if the last copy of the Master Declaration were to disappear from the face of this planet, Plaintiff would have no difficulties whatsoever in proving up what duties or obligations are owed by ACCA to Plaintiff under this lawsuit without reference to or reliance upon the Master Declaration." Pl.'s Resp. at ¶ 12.

in which he pressed some of his original arguments and lack of reliance on the Master Declaration, although he did not dispute his reliance on and agreement under the 555 Declaration. In fact, Ku admitted his breach of implied service contract claims against ACCA are based on ACCA's obligations derived from, among other places, the 555 Declaration. Pl. Supp. [#144] at ¶ 12.

The Court assumes Ku's claims that he is not relying on the Master Declaration are sufficient to rebut ACCA's first argument—Ku cannot seek the benefits of the Master Declaration without being estopped from avoiding its burdens, such as the arbitration clause—because Ku is not seeking any of the benefits of the Master Declaration. However, Ku's admission that ACCA's obligations to him derive from the 555 Declaration necessarily implies his agreement to Section 3.3 of the 555 Declaration, is an agreement to arbitrate.[8] Unfortunately for Ku, although he believes he can prove his claims without reference to the Master Declaration, he has clearly agreed to be bound by the Master Declaration, including the arbitration clause.

Despite all of the complicated facts, the agreement to arbitrate is quite straight-forward and very clear from the text of the 555 Declaration.[9] Ku was bound by the 555 Declaration as soon as he was an owner of his condos. He admits this. *Id.* Section 3.3 of the 555 Declaration indicates

---

[8]The Section reads in part: "[e]ach owner and any occupant of any [residential unit] automatically shall be deemed to have agreed to comply strictly with the provisions of the Master Declaration." Def. Supp. [#143] Ex. A § 3.3.

[9]The Court does recognize ACCA's original argument has been modified to include the alternative argument which the Court now accepts. ACCA still wants to avoid any of its own obligations toward Ku under the Master Declaration, however the Court finds Section 3.3 of the 555 Declaration clearly requires Ku to comply with the Master Declaration. The implication from this is that ACCA does, in fact, owe duties to Ku under the Master Declaration, although it is not apparent from the text. Also relevant, although not discussed by either party, is the unconscionability of an arbitration clause if only one of the parties is entitled to request arbitration. *See Bell v. Koch Foods of Miss., LLC*, 358 Fed. Appx. 498, 503 (5th Cir. 2009). If such an argument is raised in arbitration, it may invalidate the clause itself.

Ku's agreement to be bound by the terms of the Master Declaration. Def. Supp. Ex. A. § 3.3. One of the terms of the Master Declaration is an arbitration clause. *See* Def. Mot. [#122] Ex. B at § 10.13. Thus Ku's agreement to be bound by the 555 Declaration also was an agreement to be bound by the Master Declaration, including the arbitration clause.[10] Thus, finding the parties' agreement to arbitrate manifest in the 555 Declaration, the Court now must examine the arbitration clause itself to determine whether Ku's claims would fall under it.

2. **Is the Dispute Within the Scope of the Agreement?**

The arbitration clause in the Master Declaration reads in part:

> All disputes, claims or controversies, save and except those set out in subpart (f),[11] arising under this Declaration which shall not be resolved within fifteen (15) days after same have arisen . . . and all other matters which are require under the provisions of this Declaration to be submitted for, or determined by, arbitration shall be submitted for arbitration to the American Arbitration Association ("AAA") or any other mutually agreed upon arbitrator, pursuant to and subject to this Section 10.13.

Master Decl. at § 10.13. In short, any dispute arising under the Master Declaration is covered by the arbitration clause. Ku argues both that his claims do not arise under the Master Declaration or that the arbitration clause specifically excludes certain parties from the arbitration process, including ACCA. Neither of his arguments are availing. The Court will address each below.

---

[10]Of course, if Ku were to drop all claims against ACCA and assert claims only against 555 COA, there would not be mandatory arbitration because the 555 Declaration lacks an arbitration clause. However, if 555 COA then pursued claims against ACCA, as the Court presumes it would, those claims would be arbitrable since the entire question is which parties owed which duties under the terms of the Master Declaration and the other Declarations. Thus, it seems Ku may be caught in the web of arbitration, no matter which way he turns, by virtue of the 555 Declaration's incorporation of the Master Declaration.

[11]Subpart (f) concerns foreclosure and other proceedings. Neither party asserts this subpart is applicable to the instant case.

### a. Arising Under the Master Declaration

Ku argues his breach of contract and breach of fiduciary duty actions arise from an implied-in-fact contract, and the statutory duties of ACCA to maintain, repair, and provide insurance. Pl. Resp. [#124] at 7-8 (citing Texas Uniform Condominium Act §§ 82.107, 82.111). Thus, he asserts, these actions do not arise under the Master Declaration. Ku is mistaken. Ku's breach of contract and breach of fiduciary duty claims all necessarily fall within the purview of the Master Declaration's arbitration agreement, even if he does not seek to rely on the Master Declaration, because the only fiduciary or contractual duty ACCA *could* owe Ku must arise from the Master Declaration, as Ku alleges no other relationship with or connection to ACCA.

Ku also argues his tort claims exist independently and without reference to the Master Declaration and thus could not possibly arise under it. *Id.* at 8. However, the factual allegations underlying Ku's tort claims make clear they arise under the Master Declaration. The tort claims also arise from maintenance and insurance duties which ACCA only owes to Ku, if at all, because of the Master Declaration.

Ku argues his tort claims are based on a reasonable corporation standard, for example, whether a reasonable managing association have acted like ACCA under similar circumstances. *Id.* This misses the point. ACCA's duties as a managing association are those defined and prescribed in the Master Declaration, and ACCA owes no duty to Ku without the existence of the Master Declaration.[12] Indeed, whether ACCA was acting reasonably would have to be examined in light

---

[12]For instance, part of Plaintiff's negligence *per se* claim is that ACCA failed to provide insurance as required by TULA, Texas Property Code § 82.111. Am. Compl. at ¶ 156. ACCA argues the Master Declaration requires ACCA, ACE, and 555 COA to maintain insurance coverage, and determines what part of the Neches Hotel Condominiums ACCA is required to insure. Master Decl. at ¶ 6.4. Thus whether Ku has an insurance-related claim against ACCA depends upon which

of the duties created for it by the Master Declaration. Ku inherently recognizes this when he asserts ACCA's insurance duties derive from statutes "*much* more" than from the Master Declaration. *Id.* at 9. While it may only be an issue of degree, Ku's tort claims arise under the Master Declaration and are thus within the scope of the agreement.

### b. Parties Excluded From the Arbitration Clause

Ku next argues the arbitration clause paradoxically precludes arbitration of his claims against ACCA because ACCA is not identified as a proper party in the arbitration clause. The provision Ku focuses on states "the foregoing agreement to arbitrate shall not constitute any agreement or consent to arbitration of any dispute, claim, controversy or matter not described in this Section or *with any person not named or described herein.*" Master Decl. at § 10.13(e) (emphasis added). Ku argues "described herein" only refers to those persons specifically named in the arbitration clause. Since ACCA is not named in section 10.13, he concludes, his claims against ACCA are not subject to arbitration. Pl. Resp. [#124] at 5-6. This argument is flawed for two reasons. First, the arbitration clause clearly covers "all disputes, claims, and controversies . . . arising under this Declaration." Master Decl. § 10.13. This includes claims arising under section 5.3 of the Master Declaration, which specifically provides for claims against ACCA. *Id.* at § 5.3 (providing for a "Right of Action by the Owners" against ACCA "for its failure to comply with the provisions hereof or to perform its duties and responsibilities hereunder"). Thus ACCA is properly subject to arbitration.

Second, Ku's argument fails because the arbitration clause itself does not describe any persons. Rather, section 1.1 names and describes all entities subject to the terms of the Master

---

entity has insurance responsibility under the Master Declaration for that portion of Ku's condo. In other words, this claim arises under the Master Declaration.

Declaration. *See id.* at § 1.1 ("'Association' shall mean Austin Convention Condominium Association, Inc. . . . created for the purposes and possessing the rights, powers and authority set forth herein and in the articles."). Thus, the phrase "described herein" as used in section 10.13 only makes sense if it is referring to entities described in section 1.1.

B.     **Any Reason the Claims are Nonarbitrable?**

Having found the parties did agree to arbitrate the claims at issue, the Court must now ask if "any federal statute or policy renders the claims nonarbitrable." *Sherer*, 548 F.3d at 381. The burden lies with the party attempting to avoid arbitration "to show that Congress intended to preclude a waiver of a judicial forum" for the party's claims. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Ku attempts to meet his burden by relying on Federal Rule of Civil Procedure 1 and the constitutional protection diversity jurisdiction affords to a foreign plaintiff.

Ku argues Rule 1 secures a "just, speedy, and inexpensive determination of every action" and since compelling arbitration adds expense and time to this action, Congress has intended to preclude arbitration for his claims. Pl. Resp. [#124] at 10. As much as the Court may relish the opportunity to eliminate all future motions to compel arbitration merely by citing Rule 1 as a prohibition, Rule 1 only states how the Rules themselves should be construed. It does not indicate Congress' intent to preclude a waiver of a judicial forum for Ku's claims. Ku also argues the arbitration, which would be held in Austin, Texas, leaves adjudication of his claims in the hands of a local arbitrator who may be prejudiced in favor of the City of Austin officials who make up a large portion of the Board of Directors of ACCA. In essence, Ku is concerned he will not receive a fair shake, or as fair a shake, in arbitration in Austin as he would in federal court in Austin. While the Court understands his concern, this does not meet his burden of showing any reason the claims are nonarbitrable. Ku's

claims against ACCA are actually rather straight-forward contract and tort claims. A written agreement to arbitrate, as in this case, is presumed valid and enforceable. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004). Ku has not shown any external legal constraints that foreclose arbitration. One of Ku's related concerns involves the challenge of pursuing arbitration of his claims against ACCA, while also forcing him to pursue claims against the other defendants in this Court. This is a valid concern the Court will address below.

## II. Other Defendants

There has been no opposition to the possibility of arbitration from the other defendants: ACE, Hilton, 555 COA, and Schneyer. Ku's claims against each of these defendants are all inextricably intertwined with the factual and legal allegations Ku has asserted against ACCA. Indeed, some of ACCA's defenses to claims would involve pinning the responsibility on one of the other defendants. Ku's entire case involves claims based on water and noise problems in his condos. While Ku brings claims against multiple parties, some of whom may not have agreed to arbitrate under the Master Declaration,[13] all of his claims against the non-signatory defendants are inextricably intertwined with and dependent upon his claims against ACCA. There is no way to bring an action solely against any of the other defendants without considering the actions of ACCA. As such, equitable estoppel applies allowing the Court to compel arbitration involving the non-signatory defendants. *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) (outlining procedure for dealing with inextricably intertwined claims against non-signatory defendants). As for Defendants ACE, Hilton, and ACCA's third party claims against the contractors, subcontractors and

---

[13]At a minimum, 555 COA and ACE are actually members of ACCA, and thus presumably bound by the Master Declaration. *See* Def. Mot. [#122] at 2.

other entities, these are all stymied pending the results of the arbitration. Thus, in accordance with the foregoing,

IT IS ORDERED that Defendant ACCA's Motion to Compel Arbitration [#122] is GRANTED;

IT IS FURTHER ORDERED that arbitration be completed within six (6) months from the date of this order;

IT IS FURTHER ORDERED that this case is STAYED for six (6) months from the date of this order to allow the completion of arbitration. The parties shall submit a status report in the form of a letter every ninety (90) days advising as to the status of the arbitration proceeding.

IT IS FINALLY ORDERED that all other pending motions in this case are DISMISSED WITHOUT PREJUDICE to refiling following the stay.

SIGNED this the 16th day of June 2010.

SAM SPARKS
UNITED STATES DISTRICT JUDGE